IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| **DEVONTE A. DILLARD, #54090-177,** | § | |
| **MOVANT,** | § | |
| | § | |
| v. | § | CIVIL CASE NO. 3:17-CV-3307-L-BK |
| | § | (CRIMINAL CASE NO. 3:16-CR-116-L-2) |
| | § | |
| **UNITED STATES OF AMERICA,** | § | |
| **RESPONDENT.** | § | |

**FINDINGS, CONCLUSIONS AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE**

Pursuant to 28 U.S.C. § 636(b) and *Special Order 3*, this case was referred to the United States Magistrate Judge for case management, including findings and a recommended disposition. Movant Devonte Aaron Dillard ("Dillard"), through retained counsel, filed a motion to vacate, set aside, or correct sentence under 28 U.S.C. § 2255. The Court subsequently held an evidentiary hearing on the second claim that defense counsel provided ineffective assistance for failing to file a requested notice of appeal and/or for failing to consult with him regarding an appeal. Upon review of the relevant pleadings and applicable law, the Section 2255 motion should be **GRANTED** in part as to Movant's second claim, Movant should be permitted to file an out-of-time appeal, and Movant's second claim should be dismissed without prejudice.

**I.    BACKGROUND**

In 2016, pursuant to a plea agreement that included a waiver of appellate rights, Dillard pled guilty to conspiring to commit Hobbs Act robbery, in violation of 18 U.S.C. § 1951(a), and using, carrying, brandishing, and discharging a firearm during and in relation to a crime of violence, in violation of 18 U.S.C. § 924(c)(1)(A)(iii), and was sentenced to 120 months'

imprisonment on each count, to be served consecutively, for a total term of 240 months. Crim. Doc. 109. Although he did not file a direct appeal, Dillard timely filed this Section 2255 motion, alleging that (1) his Section 924(c) conviction is unconstitutional and (2) his trial counsel rendered ineffective assistance by failing to file a notice of appeal despite his request to do so and for failing to consult with him regarding an appeal. Doc. 2 at 5. The Government filed a response in opposition and Dillard filed a reply. Doc. 6; Doc. 8. Subsequently, on April 3, 2019, an evidentiary hearing was held on Dillard's claim that counsel failed to file a requested notice of appeal and to consult with him regarding an appeal, and the parties have since filed post-hearing briefs on that issue. Doc. 16; Doc. 17.

Having now reviewed all the pleadings, testimony, and applicable law, the Court concludes that trial counsel was constitutionally ineffective for failing to consult with Dillard regarding an appeal.

## II.  ANALYSIS

The Sixth Amendment guarantees a defendant reasonably effective assistance of counsel at all critical stages of a criminal proceeding. *See Cuyler v. Sullivan*, 446 U.S. 335, 344 (1980). To obtain post-conviction relief on a claim that defense counsel was constitutionally ineffective, a defendant must prove that counsel's representation "fell below an objective standard of reasonableness" and that any such deficiency was "prejudicial to the defense." *Strickland v. Washington*, 466 U.S. 668, 688, 692 (1984). Failure to establish either deficient performance or prejudice defeats the claim. *Id.* at 697.

In *Roe v. Flores-Ortega*, 528 U.S. 470, 477 (2000), the United States Supreme Court applied the *Strickland* test to claims "that counsel was constitutionally ineffective for failing to file a notice of appeal." The Supreme Court reaffirmed the well-settled rule that "a lawyer who

disregards specific instructions from the defendant to file a notice of appeal acts in a manner that is professionally unreasonable." *Flores-Ortega,* 528 U.S. at 477 (cited cases omitted); *see also Garza v. Idaho*, — U.S. —, 139 S. Ct. 738, 746 (2019) ("Where . . . a defendant has expressly requested an appeal, counsel performs deficiently by disregarding the defendant's instructions."). Under such circumstances, "prejudice is presumed 'when counsel's constitutionally deficient performance deprives a defendant of an appeal that he otherwise would have taken'" and "'no further showing from the defendant of the merits of his underlying claims'" is required. *Garza,* 139 S. Ct. at 744, 747 (quoting *Flores-Ortega*, 528 U.S. at 484); *United States v. Tapp*, 491 F.3d 263, 265-66 (5th Cir. 2007) (concluding the defendant need only show "a reasonable probability that, but for counsel's failure, he would have timely appealed"). The "presumption applies even when the defendant has signed an appeal waiver." *Garza*, 139 S. Ct. at 744-45; *see also Tapp*, 491 F.3d at 266 (extending the *Flores-Ortega* rule to cases where a defendant has waived his right to direct appeal and collateral review).

Even where a defendant does not instruct counsel to file an appeal or clearly convey his desire to appeal, however, counsel has a constitutional duty to consult with the defendant about an appeal. *Flores-Ortega,* 528 U.S. at 480. Such a duty arises "when there is reason to think either (1) that a rational defendant would want to appeal (for example, because there are nonfrivolous grounds for appeal), or (2) that this particular defendant reasonably demonstrated to counsel that he was interested in appealing." *Id.* Moreover, consulting means "advising the defendant about the advantages and disadvantages of taking an appeal, and making a reasonable effort to discover the defendant's wishes." *Id.* at 478; *United States v. Cong Van Pham*, 722 F.3d 320, 323-24 (5th Cir. 2013)  "The existence of a duty to consult is assessed in light of 'all the information counsel knew or should have known.'" *Cong Van Pham*, 722 F.3d at 324 (5th Cir.

2013) (quoting *Flores-Ortega*, 528 U.S. at 480). "Whether the conviction followed a trial or a guilty plea is 'highly relevant,' although not determinative, as is whether the defendant waived his right to appeal and whether he received a sentence for which he bargained." *Id.* The Supreme Court also anticipated that "district courts would find a duty to consult 'in the vast majority of cases.'" *Id.*

In the event counsel breaches the constitutionally imposed duty to consult, whether prejudice resulted again turns on whether the defendant can "demonstrate that there is a reasonable probability that, but for counsel's deficient failure to consult with him about an appeal, he would have timely appealed." *Flores-Ortega*, 528 U.S. at 484. This is a fact-intensive inquiry and "evidence that there were nonfrivolous grounds for appeal or that the defendant in question promptly expressed a desire to appeal will often be highly relevant" in determining whether he would have timely appealed but for counsel's deficient failure to consult. *Flores-Ortega*, 528 U.S. at 485. Although "the performance and prejudice prongs may overlap, they are not in all cases coextensive," *Id.* at 486, and, as before, the defendant "need not demonstrate 'that his hypothetical appeal might have had merit.'" *Id.*; *United States v. Bejarano*, 751 F.3d 280, 285 (5th Cir. 2014) (per curiam).

### A. Evidentiary Hearing Testimony

Dillard testified that trial counsel, Erin Hendricks ("Hendricks") visited him before sentencing, but that she never spoke to or visited him after he was sentenced. Doc. 18 at 5-6, 9 ("I never talked to her, no. No, sir."). He averred that Hendricks also did not write to him post-sentencing or otherwise personally advise him about the advantages and disadvantages of appealing. Doc. 18 at 6. Nevertheless, Dillard understood that he had a right to appeal within 14 days of sentencing, as advised by the Judge at sentencing, and desired to appeal because he

4

believed the 20-year sentence he received was too long. Doc. 18 at 4-5. Dillard did not write or call Hendricks to request her to appeal, but repeatedly directed his mother, DeVonn Dillard ("DeVonn"), to ask Hendricks to file a notice of appeal. Doc. 18 at 7, 11. Dillard testified that ultimately, after becoming resigned to the fact that no notice of appeal would be filed, he told DeVonn to "forget about it." Doc. 18 at 8-9, 11. Dillard further testified that after he was sentenced, "[e]verything was kind of blurry" and "[f]elt like a dream," and he "didn't really know what was going on." Doc. 18 at 9. He also claimed to have been previously diagnosed with an "oral language disorder, developmental dyslexia, disorder of written expression, and history of depression and anxiety." Doc. 18 at 10.

DeVonn testified that, after Dillard's sentencing, he "was begging to file an appeal" and that she asked Hendricks either by e-mail or text messages to file a notice of appeal. Doc. 18 at 14. She further testified that in response, Hendricks warned her that there was no basis to appeal and pending state charges against Dillard might not be dismissed in the event of an appeal. Doc. 18 at 14. DeVonn maintained that she nevertheless spent endless hours researching for a possible ground for appeal—thinking that one should be identified in the notice of appeal—and discovered the 2015 Supreme Court's decision in *Johnson v. United States*, — U.S. —, 135 S. Ct. 2551 (2015). Eventually, however, Hendricks, who was retained, informed DeVonn that *Johnson* was inapplicable. Doc. 18 at 14-16. Hendricks advised DeVonn that she would withdraw from the case and referred DeVonn to her new law partner who handled appeals. Doc. 18 at 16-17. DeVonn testified that she, however, lacked the money to hire appellate counsel. Doc. 18 at 16-17. Ultimately, following a "push-pull conversation," in which DeVonn advised Dillard that she could not find a basis for appeal and advised him to work on getting his state

5

court charges dropped, Dillard and DeVonn decided not to pursue an appeal. Doc. 18 at 18-19. DeVonn subsequently notified Hendricks of that fact by text message. Doc. 18 at 19.

On cross examination, DeVonn confirmed that, Hendricks told her that Dillard could pursue an appeal *in forma pauperis* ("IFP") with appointed counsel. Doc. 18 at 22. While DeVonn did not understand what IFP meant, she knew what an appointed lawyer was. Doc. 18 at 22. On cross and redirect examination, DeVonn reiterated that the pressure of (1) not knowing if the state charges would be dismissed in the event of an appeal, (2) counsel advising her there was no issue to appeal, and (3) confusion about whether she would have to pay for an appeal, affected Dillard's final decision not to appeal. Doc. 18 at 22-23, 27.

Hendricks testified that she discussed with Dillard his right to appeal on several occasions before sentencing, but that she did not have any direct contact with him after sentencing and he never personally instructed her to file a notice of appeal. Doc. 18 at 34-38. Hendricks acknowledged that Dillard had given her permission to speak with DeVonn about his case and, as a result, that she communicated with DeVonn regularly. Doc. 18 at 38. Hendricks was aware that following his sentencing, Dillard was "struggling or begging about filing a notice of appeal." Doc. 18 at 40. While Hendricks wrote to Dillard to voice her disappointment in the sentence he received,[1] she did not write to inform him about his right to appeal. Doc. 18 at 40, 42-43. Hendricks confirmed that DeVonn ultimately directed her via text message not to file a notice of appeal, and averred that she had no reason to believe that DeVonn was not accurately conveying Dillard's wishes. Doc. 18 at 45-56. Hendricks also testified that if Dillard had wanted to appeal, she would have filed a notice of appeal. Doc. 18 at 47.

---

[1] Although the letter was referenced during Hendricks' testimony, the Government never offered it. Doc. 18 at 44.

During cross examination, Hendricks admitted discussing the pros and cons of appealing with Dillard only prior to sentencing and confirmed that she did not speak or consult with him about appeal after sentencing. Doc. 18 at 53. She testified that had Dillard asked her to appeal, she would have requested to speak with him directly. Doc. 18 at 54. Hendricks stated that after Dillard was sentenced, she was satisfied with communicating only with DeVonn, who would in turn speak to Dillard. Doc. 18 at 54-55 ("I was satisfied with those communications . . . I felt like I was being told what to do by the client through his mom."). Hendricks testified that although DeVonn frequently sent Hendricks materials relating to Dillard's case that the two women would discuss, but she did not recall discussing the *Johnson* holding with DeVonn. Doc. 18 at 55-56. In response to the Court's inquiry, Hendricks affirmed that Dillard had reasonably demonstrated through DeVonn that he had an interest in appealing, but testified that she believed she had sufficiently consulted with him about the pros and cons of appealing through DeVonn. Doc. 18 at 62-63.

**B.    Counsel's Failure to File a Requested Notice of Appeal**

Dillard asserts Hendricks rendered ineffective assistance when she failed to file a notice of appeal despite his repeated requests for an appeal.

Based on the evidence presented at the evidentiary hearing, the Court finds that Dillard did not directly ask Hendricks to file an appeal. While he was "begging" for an appeal through his mother, Dillard's final instruction to DeVonn, which she in turn relayed to Hendricks, was not to appeal. Based on this evidence, the Court finds credible Hendrick's testimony that Dillard did not explicitly state that he wanted to appeal. *See Flores-Ortega*, 528 U.S. at 477 ("a defendant who explicitly tells his attorney *not* to file an appeal plainly cannot later complain that, by following his instructions, his counsel performed deficiently" (emphasis in original)).

Because Hendricks did not disregard an explicit instruction from Dillard to file a notice of appeal, she was not constitutionally ineffective. *See Flores-Ortega*, 528 U.S. at 477 (restating that "a lawyer who disregards specific instructions from the defendant to file a notice of appeal acts in a manner that is professionally unreasonable" (cited cases omitted)). Accordingly, Dillard is not entitled to relief on this claim.

### C.     Counsel's Failure to Consult with the Defendant About an Appeal

Notwithstanding the foregoing, the Court finds Hendricks rendered constitutionally ineffective assistance in failing to consult with Dillard about appealing following sentencing. "[C]ounsel has a constitutionally imposed duty to consult with the defendant about an appeal when there is reason to think . . . that [the] defendant reasonably demonstrated to counsel that he was interested in appealing." *Flores-Ortega*, 528 U.S. at 480. Here, Hendricks admitted that following sentencing, Dillard made it clear, through DeVonn, that he wished to appeal—indeed he "was begging to file an appeal" because he was dissatisfied with the length of his sentence. Because Dillard reasonably demonstrated an interest in appealing his sentence, Hendricks had a duty to consult with him about his appeal, that is, to explore the advantages and disadvantages of appealing, and make a reasonable effort to determine Dillard's wishes. *See Flores-Ortega*, 528 U.S. at 487; *Cong Van Pham*, 722 F.3d at 325-27 (collecting cases and concluding defendant reasonably demonstrated his interest in appealing his sentence, thus triggering counsel's duty to consult, because he was concerned about the length of his sentence, had expressed his belief that he would get a sentence below the statutory mandatory minimum, had entered his plea on that belief, and wanted to do something to get less time).

At the evidentiary hearing, however, Hendricks conceded that she did not consult with Dillard post-sentencing about the *pros and cons* of appealing. Hendricks affirmed that despite

8

Dillard's repeated pleas to appeal, she never contacted Dillard to ascertain whether he desired to file an appeal or to discuss his disappointment with the length of his sentence and weigh the benefits and disadvantages of appealing. *See Cong Van Pham*, 722 F.3d at 324 (finding counsel had not sufficiently consulted where, at most, "counsel discussed an appeal in the abstract and even then did so only *before* the sentence was pronounced," and, post-sentencing, counsel "neither mentioned the possibility of an appeal at all nor made any effort to discover the defendant's wishes in that regard).

The Court further finds that Hendricks' belief that she sufficiently counseled Dillard's mother about the advantages and disadvantages of appealing did not obviate her duty to consult with Dillard personally about an appeal. "[T]he decision to appeal rests with the defendant . . . [and] the better practice is for counsel routinely to *consult with the defendant* regarding the possibility of an appeal." *Flores-Ortega*, 528 U.S. at 479 (emphasis added); *Garza*, 139 S. Ct. at 746 (noting "'the accused has the ultimate authority' to decide whether to 'take an appeal'" (quoting *Jones v. Barnes,* 463 U.S. 745, 751 (1983))). "The Constitution requires that the client be advised not only of his right to appeal, but also of the procedure and time limits involved and of his right to appointed counsel on appeal." *United States v. Faubion,* 19 F.3d 226, 231 (5th Cir. 1994) (internal quotations and citation omitted). Moreover, "[c]ounsel's duty to a criminal defendant . . . requires more than simply notice that an appeal is available or advice that an appeal may be unavailing." *White v. Johnson*, 180 F.3d 648, 652 (5th Cir. 1999).

The cases cited by the Government in its supplemental brief for the proposition that a family member can convey communications to a defendant are inapposite, as they do not address the issue of whether a defense counsel's communication with a family member is <u>alone</u> sufficient to fulfill the constitutional obligation to consult with a client who has unequivocally indicated the

desire to appeal. Doc. 16 at 4 (citing *United States v. Malone*, 442 Fed. Appx. 864 (4th Cir. 2011)[2]; *Battaglini v. United States*, 198 F. Supp. 3d 465 (E.D. Pa 2016). Indeed, each court concluded that counsel's consultation with/through a family member was insufficient where counsel otherwise failed to confirm the defendant's wishes. *See Malone*, 442 F. App'x at 868 (finding counsel's failure to determine whether the defendant actually received his advice regarding an appeal—which was given through discussions with the defendant's son and daughter-in-law—or whether he had decided to appeal, coupled with the defendant's repeated inquiries regarding an appeal, rendered counsel's performance deficient); *Battaglini*, 198 F. Supp. 3d at 473 (concluding counsel was ineffective where he began but never completed discussing appeal with defendant, instead following up only with the defendant's wife, and never ascertained the defendant's wishes regarding appeal).

However, even if DeVonn was authorized to act on Dillard's behalf, Hendricks nevertheless failed to make a "reasonable effort to discover the defendant's wishes." *Flores-Ortega*, 528 U.S. at 487. As an initial matter, her brief, electronic (and possibly telephonic) communications with DeVonn (a non-lawyer) were insufficient to detail the advantages and disadvantages of taking an appeal. As in *Battaglini* and *Malone*, Hendricks also failed to ascertain whether Dillard actually received her advice or whether the decision not to appeal was really his, apparently relying solely on her pre-sentencing practice of discussing aspects of the case with DeVonn that were subsequently conveyed to Dillard. *See Battaglini*, 198 F. Supp. 3d at 473 (finding consultation deficient despite the fact that the defendant's wife was "very involved" with defendant's criminal case and "routinely communicated with [c]ounsel on

---

[2] The Government erroneously cites *Malone* as an opinion of the Court of Appeals for the Fifth Circuit, rather than the Fourth Circuit.

[defendant's] behalf, where no evidence that [defendant] entered a power of attorney or otherwise advised [c]ounsel that [his wife] was authorized to act on his behalf concerning the decision whether to take an appeal). Under the facts presented here, including the initial persistence of Dillard in begging for an appeal, Hendricks' failure to personally consult with him was unreasonable.

Moreover, Hendricks' view that Dillard had no real basis for appeal and that an appeal would adversely impact the dismissal of his state charges, did not relieve her of the duty to consult. *See Cong Van Pham*, 722 F.3d at 325 ("[C]ounsel's professional opinion eschewing appeal does not excuse failure to consult altogether."); *Thompson v. United States*, 504 F.3d 1203, 1207 (11th Cir. 2007) ("Simply asserting the view that an appeal would not be successful does not constitute 'consultation' in any meaningful sense."). Further, as explained *infra*, it cannot be said that in November 2016, no rational defendant would have wanted to appeal the Section 924(c) residual clause challenge premised on *Johnson v. United States*. *See Flores-Ortega*, 528 U.S. at 480 (recognizing a duty to consult when a rational defendant would want to appeal because there is non-frivolous ground for appeal). Based on this record, the Court concludes that Hendricks' failure to fulfill her duty to adequately consult with Dillard constituted deficient performance under *Strickland*.

The Court next addresses whether Hendricks' deficient performance prejudiced Dillard. In light of the testimony at the evidentiary hearing, the Court has little trouble concluding that there is a reasonable probability that, but for Hendricks' deficient failure to consult with Dillard about appealing, he would have timely appealed. *Flores-Ortega*, 528 U.S. at 484. As previously noted, "evidence that there were nonfrivolous grounds for appeal or that the defendant in question promptly expressed a desire to appeal will often be highly relevant in making this

11

determination." Id. at 485. Here, contrary to Hendricks' assertions, as of Dillard's sentencing on November 22, 2016, a Section 924(c) residual clause challenge premised on *Johnson* presented an arguable, non-frivolous argument for appeal, which, in fact the Office of the Federal Public Defender was raising in direct criminal appeals and Section 2255 motions before this Court. *See United States v. Davis*, — U.S. —, 139 S. Ct. 2319 (2019) (holding Section 924(c)(3)(B) unconstitutionally vague and vacating in part and remanding March 2016 judgment from this Court in No. 3:15-CR-94-O(2)). The September 2016 appellate brief in *Davis* (filed two months before Dillard's sentencing) specifically argued that the Section 924(c) convictions, which were premised at least in part, as in this case, on conspiracy to commit Hobbs Act robbery, could not stand in light of *Johnson*. *See United States v. Davis*, 677 F. App'x 933, 936 (5th Cir. 2017) (per curiam), *cert. granted*, *judgment vacated sub nom. Glover v. United States*, 138 S. Ct. 1979 (2018). Moreover, prior to Dillard's March 2016 indictment, the Ninth Circuit had found the identically worded clause in 18 U.S.C. § 16(b) void for vagueness. *See Dimaya v. Lynch*, 803 F.3d 1110 (9th Cir. 2015), *aff'd sub nom.*, *Sessions v. Dimaya*, 138 S. Ct. 1204 (2018). Thus, the legal landscape as it existed at the time of Dillard's sentencing would have supported the conclusion that a *Johnson* challenge was not frivolous.

As previously noted, it is undisputed that Dillard promptly expressed a desire to appeal, which is always "highly relevant" in determining prejudice in a failure to consult case. *Flores-Ortega*, 528 U.S. at 485. At the evidentiary hearing, Hendricks admitted that Dillard, through DeVonn, initially demonstrated an interest in appealing. Doc. 18 at 61-62. While this fact alone is insufficient proof that he would have appealed, Dillard also testified that he wanted a notice of appeal to be filed in his case. Doc. 18 at 9. The Court finds Dillard's claim plausible in light of the other evidence presented. Moreover, considering the entire record, the Court does not find

that the post-sentencing delay—waiting almost a full year after sentencing to file the Section 2255 motion—weighs against Dillard and "'indicate[s] … [that he] was unlikely to have' timely appealed." *Cf. Bejarano*, 751 F.3d at 287 (concluding that defendant's self-serving, implausible testimony at evidentiary hearing that he would have appealed and his delay of almost one year after sentencing to seek Section 2255 relief were insufficient to establish prejudice). Thus, the Court concludes that Hendricks' deficient performance deprived Dillard of an appeal that he otherwise would have taken. *Flores-Ortega*, 528 U.S. at 484. Thus, prejudice is established.

Accordingly, Dillard is entitled to file an out-of-time appeal. *See United States v. West*, 240 F.3d 456, 459-60 (5th Cir. 2001) (when an attorney renders constitutionally ineffective assistance of counsel in failing to preserve appellate rights, the defendant is entitled to an out-of-time appeal). His section 2255 motion should be dismissed without prejudice, and the underlying criminal judgment should be re-entered to trigger anew the period for him to file his notice of appeal. *Id.* at 460.

### III.   CONCLUSION

For the foregoing reasons, the Section 2255 motion should be **GRANTED** in part as to the second claim, Movant should be permitted to proceed with an out-of-time appeal in his underlying criminal case, and the first claim should be dismissed without prejudice. Further, the judgment in the underlying criminal action, Cause No. 3:16-CR-00116-L-02, should be re-

entered on the docket of this Court, so that Movant may proceed with an out-of-time appeal by filing a timely notice of appeal.

**SO RECOMMENDED** on July 31, 2019.

_____
RENEE HARRIS TOLIVER
UNITED STATES MAGISTRATE JUDGE

**INSTRUCTIONS FOR SERVICE AND
NOTICE OF RIGHT TO APPEAL/OBJECT**

A copy of this report and recommendation will be served on all parties in the manner provided by law. Any party who objects to any part of this report and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b). An objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and indicate the place in the magistrate judge's report and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Services Automobile Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996), *modified by statute on other grounds*, 28 U.S.C. § 636(b)(1) (extending the time to file objections to 14 days).

14